## LOUISIANA & P. B. RY. CO. v. UNITED STATES. *

(District Court, W. D. Arkansas, Texarkana Division.   March 4, 1921.)

No. 44.

Commerce ⬤═95—Order of Interstate Commerce Commission not reviewable.

A finding by the Interstate Commerce Commission that a prior order making an allowance to tap lines for the haul of cars from place of loading to the junction point, based on mileage, covered only the direct movement from loading to junction point, and did not entitle a tap line to include additional distance necessary to reach a weighing scale, on the ground that it was not shown to be a necessary movement by such line, *held* correct as matter of law and not reviewable on the facts, where all the evidence on which it was based is not before the court.

In Equity. Suit by the Louisiana & Pine Bluff Railway Company against the United States.   Decree for defendant.

Suit under Commerce Court Act (36 Stat. 539) and Urgent Deficiencies Act Oct. 22, 1913 (38 Stat. 219), to enjoin, set aside, annul, or suspend order of Interstate Commerce Commission, June 10, 1919 (53 Interst. Com. Com'n R. 475), fixing allowances or divisions to be paid by Missouri Pacific Railway Company to Louisiana & Pine Bluff Railway Company, the entire capital stock of which is owned by Union Sawmill Company, the principal shipper over its line.   Final hearing on motion of Louisiana & Pine Bluff Railway Company for permanent injunction, and on motion of defendants to dismiss the petition.

Luther M. Walter, of Chicago, Ill., Barker & Britton, of St. Louis, Mo., Gaughan & Sifford, of Camden, Ark., and Borders, Walter, Burchmore & Collin, of Chicago, Ill. (Harry C. Barker and Roy F. Britton, both of St. Louis, Mo., T. J. Gaughan and J. T. Sifford, both of Camden, Ark., and Luther M. Walter and John S. Burchmore, both of Chicago, Ill., on the brief), for petitioner.

Blackburn Esterline, Sp. Asst. Atty. Gen., for the United States.

W. R. McFarland, of Norfolk, Neb. (P. J. Farrell, of Washington, D. C., of counsel), for Interstate Commerce Commission.

Before STONE, Circuit Judge, and TRIEBER and YOUMANS, District Judges.

PER CURIAM.   On July 29, 1914, the Interstate Commerce Commission entered an order making allowances to tap lines such as this plaintiff.   So far as here material, these allowances were $3 per car for distances between 1 and 3 miles from loading to junction point and 1½ cents per 100 pounds for distances from 3 to 6 miles.   Cars loaded with lumber at the platforms of the Union Sawmill Company, if hauled directly to the junction point at Dollar Junction, travel slightly less than 3 miles; but, if taken by way of a track scale, located in the opposite direction from the junction, they travel 3.25 miles.   The scales are located on the track of and controlled by the trunk line, but the tap line has contractual rights to use that portion of the trunk line.

---

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In a decision and order of the Commission, entered June 10, 1919, it was determined that the plaintiff could not include the distance of the scale haul, and was entitled only to the charge of $3, based upon a haul of less than 3 miles. The basis of this decision was that it had not been shown that it was necessary for the tap line, rather than the trunk line, to take this weight. After denial by the Commission of a petition to modify this order, this complaint was filed to enjoin the enforcement of the above order of June 10, 1919. Issues have been joined by answer, and the United States has filed a motion to dismiss. By consent of parties the matter has been heard on final submission upon the pleadings and a subsequent supplemental order of the Commission introduced in evidence. This latter order is not regarded as affecting the issues.

The Commission (40 Interest. Com. Com'n R. 470) interpreted and applied its order of July 29, 1914, which established the basis of tap line charges, as contemplating a direct haul from the loading point to the junction point, without any diversion not made necessary to safely and properly reach such junction point. It there said (italics ours):

"In other words, the Pine Bluff, in order to bring about an increase in its earnings, claims to be entitled to compensation for an *out of line haul* to the scale track of nearly a mile. Were we to lend our approval to any such arrangement, not only would the Pine Bluff be placed in a more advantageous position then any other tap line in this territory performing a similar service, but such a ruling would open the way in the case of many tap lines for a relocation of their track scales, so as to require a long back haul, and in that way to lay a basis for divisions or allowances very materially in excess of those *fixed by the Commission for the distance covered by a direct movement from the mill to the junction.*"

We accept this interpretation, by the Commission, of the meaning of its own order, not only because the order itself is clearly susceptible of such interpretation, but because of the evil results (as set out in the above quotation) which might follow any other conclusion. As to the importance and imminence of such results we are inclined to respect the fears of the Commission, for, as said by the Supreme Court in O'Keefe v. U. S., 240 U. S. 294, 303, 36 Sup. Ct. 313, 317 (60 L. Ed. 651):

"A tribunal such as the Interstate Commerce Commission, expert in matters of rate regulation, may be presumed to be able to draw inferences that are not obvious to others."

Taking this as the meaning of this order, we turn to its application to this action. The Commission has found in this case (53 Interst. Com. Com'n R. 475) that "the evidence does not show that it is necessary that the shipments be weighed by the tap line rather than by the trunk line." We cannot review this finding, as we have only a portion of the evidence before us. Therefore we find no error of fact in the findings of the Commission here involved, nor any misapplication of law.

Therefore the bill should be, and is, dismissed.